**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                              |   |                              |
|------------------------------|---|------------------------------|
| JOSHUA M. AMBUSH             | ) |                              |
|                              | ) |                              |
|     Plaintiff, | ) |                              |
|                              | ) |                              |
|     v.   | ) | Civil Action No. 15-1237 (EGS) |
|                              | ) |                              |
| MICHAEL ENGELBERG, *et al*.  | ) |                              |
|                              | ) |                              |
|     Defendants. | ) |                        |

## **MEMORANDUM OPINION**

Pending before the Court is plaintiff Joshua Ambush's motion to disqualify Neal Sher and Charles Both as counsel for defendants Eliezer Perr, Yedidiah Perr, American Center for Civil Justice, Inc. ("ACCJ"), American Center for Civil Justice, Religious Liberty and Tolerance, Inc., American Center for Recovery, LLC, American Center for Freedom of Religion, and Neal Sher (collectively, "Center Defendants"). Plaintiff asks the Court to disqualify Mr. Sher and Mr. Both from representing the Center Defendants because of purported conflicts between counsel and their current and former clients in violation of D.C. Rules of Professional Conduct ("D.C. Rules") 1.7 and 1.9. Plaintiff also asserts that disqualification of Mr. Sher is necessary under D.C. Rule 3.7, which prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. Having carefully considered the parties'

written submissions, including supplemental memoranda and responses, plaintiff's motion is **DENIED** at this stage of the proceedings, without prejudice to being refiled should the circumstances warrant.

I. BACKGROUND

On May 30, 1972, three members of a Japanese terrorist organization attacked passengers at the Lod Airport located near Tel Aviv, Israel, killing and wounding dozens of individuals. In 2006, ACCJ, a non-profit organization that "advocate[s] for individuals who have been victims of foreign terrorist attacks," and Mr. Ambush, an attorney, began working together to seek compensation for various claimants injured as a result of the Lod Airport massacre. Compl. ¶¶ 10, 33, 54-56. As part of his work with ACCJ, Mr. Ambush filed a lawsuit – *Franqui v. Syria*, No. 06-0734 (RBW) (D.D.C 2006) – on behalf of certain Puerto Rican individuals and estates against those purportedly responsible for the attack. *Id.* ¶¶ 54-55.

In the summer of 2008, the governments of Libya and the United States negotiated a treaty pursuant to which Libya, one of the defendants in the *Franqui* action, agreed to create a settlement fund to compensate victims of state-sponsored terrorism, including victims of the Lod Airport massacre. *Id.* ¶¶ 61-62. Shortly thereafter, Mr. Ambush and the ACCJ became "embroiled in a dispute as to the management and control of the

pending claims before the Department of State and Ambush's compensation," and ACCJ sued Mr. Ambush in an action captioned *American Center for Civil Justice v. Ambush*, No 09-233 (PLF) (D.D.C. 2011) ("Attorneys' Fees Litigation"). *Id.* ¶¶ 69-70, 75. Attorneys Mr. Sher and Mr. Both, among others, represented ACCJ in that proceeding and were involved in negotiating the settlement agreement that resolved that case in 2012. *See* Pl.'s Mot. to Disqualify Counsel ("Mot."), ECF No. 11 at 1-2; Defs.' Opp. to Pl.'s Mot. to Disqualify Counsel ("Opp."), ECF No. 14 at 2. Along with ACCJ, Michael Engelberg, who was then president of ACCJ, and Eliezer Perr, a member of the board of directors of ACCJ, were parties to the settlement agreement. Compl. Ex. 1.

The instant suit stems from a purported breach of that settlement agreement. Plaintiff alleges that ACCJ, Dr. Engelberg, Mr. Perr, Mr. Sher, and others interfered with his efforts to seek compensation from his former clients and engaged in other activity in violation of both the settlement agreement and the Racketeering and Corrupt Organizations Act, 18 U.S.C. § 1962. *See generally id*. Attorney Efrem Schwalb is lead defense counsel in this action and represents all of the Center Defendants. Opp. at 2. On August 26, 2015, Mr. Sher and Mr. Both entered an appearance on behalf of the Center Defendants by signing a motion in which they requested additional time to answer or otherwise respond to the complaint. *See* ECF No. 9; *see*

3

*also* D.C. Local Civil Rule 83.6(a) ("An attorney eligible to appear may enter an appearance in a civil action by signing any pleading described in Fed. R. Civ. P. 7(a)[.]"). In addition to serving as counsel in this case and being a co-defendant, Mr. Sher is ACCJ's General Counsel. Opp. at 2. Dr. Engelberg is represented by separate counsel.

In this motion, plaintiff seeks to disqualify Mr. Sher and Mr. Both from representing the Center Defendants. According to plaintiff, Mr. Sher's role in this litigation as both counsel and defendant violates D.C. Rule 1.7 because it presents opportunities for "multiple conflicts of interest" to arise between Mr. Sher's own personal interests and the interests of the Center Defendants. Plaintiff also asserts that Mr. Sher and Mr. Both cannot represent the Center Defendants in this litigation because the interests of the Center Defendants are materially adverse to the interests of Dr. Engelberg, who is a former client of Mr. Sher and Mr. Both. Finally, because Mr. Sher was allegedly "involved in the RICO conspiracy" and negotiating the settlement agreement underlying this suit, plaintiff insists that Mr. Sher will be a necessary witness, thus requiring disqualification under D.C. Rule 3.7.

II. **STANDARD OF REVIEW**

A motion to disqualify counsel is committed to the sound discretion of the district court. *Palumbo v. Tele-Commc'ns,*

4

*Inc.*, 157 F.R.D. 129, 131 (D.D.C. 1994); *see also Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983) ("the district court bears responsibility for supervising the members of its bar and its exercise of this supervisory duty is discretionary"). The disqualification of a party's chosen counsel, however, is a "drastic measure that is disfavored by the courts." *Konarski v. Donovan*, 763 F. Supp. 2d 128, 135–36 (D.D.C. 2011) (citations and internal quotation marks omitted). Accordingly, "disqualification motions should be subject to particularly strict judicial scrutiny." *Id.* Strict scrutiny is warranted because disqualification "negates a client's right to freely choose his counsel," *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 204 (D.D.C. 2013) (internal quotation marks and citation omitted), and because such motions may be "used as 'procedural weapons' to advance purely tactical purposes," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 110 (D.D.C. 2013) (citation omitted).

The District of Columbia Rules of Professional Conduct govern the practice of law – and the qualification of counsel – in this District. *See* LCvR 83.15(a) (adopting the Rules of Professional Conduct as adopted by the District of Columbia Court of Appeals); D.C. Rules Prof. Conduct 8.5(b)(1) ("[f]or conduct in connection with a matter pending before a tribunal, the rules to be applied shall be the rules of the jurisdiction
5

in which the tribunal sits"); *see also Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C. 2008). In considering a motion to disqualify counsel, the district court must conduct a two-step inquiry: first, it must determine "whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring," and second, "if so, whether such violation provides sufficient grounds for disqualification." *Headfirst Baseball*, 999 F. Supp. 2d at 204-05 (citation and internal quotation marks omitted). The D.C. Circuit has cautioned that, even where a violation is found, disqualification is warranted only "rarely" in cases where there is a "serious question as to counsel's ability to act as a zealous and effective advocate for the client" or the "substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party[.]" *Koller By & Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds*, 472 U.S. 424 (1985).

### III. ANALYSIS

Plaintiff seeks to disqualify Mr. Sher and Mr. Both based on two primary theories: (1) conflicts of interest under D.C. Rules 1.7 and 1.9; and (2) D.C. Rule 3.7's prohibition against a

lawyer acting as an advocate when the lawyer is also a necessary witness. The Court addresses each argument in turn.[1]

## A. Conflict of Interest

In his motion, plaintiff describes two sources of potential conflicts of interests.

First, plaintiff points to Mr. Sher's role in this matter as both a co-defendant and an attorney representing the Center Defendants. Plaintiff contends that Mr. Sher's dual role violates D.C. Rule 1.7(b)(4), which requires disqualification where a "lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by . . . the lawyer's own financial, business, property, or personal interests." *See* Mot. at 9-10.

Second, plaintiff argues that Mr. Sher and Mr. Both's prior representation of Dr. Engelberg in the Attorneys' Fees Litigation forecloses their role as counsel for the Center Defendants in this case under D.C. Rule 1.9. *See* Mot. at 10-12. According to plaintiff, this suit is substantially related to the Attorneys' Fee Litigation and the interests of Dr. Engelberg

---

[1] Plaintiff also suggests that Mr. Sher should be disqualified from this case because he was previously disbarred from the District of Columbia bar. *See* Mot. at 9. But Mr. Sher is currently admitted to practice before this Court, *see* Opp. Ex. A, and it is the Court's understanding that Mr. Sher properly disclosed his prior disbarment on his application. As such, the Court declines to disqualify Mr. Sher on that basis alone.

are now materially adverse to the interests of the Center Defendants. *Id.* As evidence of this adversity, plaintiff points to the derivative suit filed in 2014 by Dr. Engelberg against ACCJ, Mr. Perr, and others ("New York state action") in which Dr. Engelberg alleges that Mr. Perr and his son "used their respective positions of authority . . . to siphon off, both directly and indirectly, over $20 million dollars of charitable funds to other shell . . . entities, owned and controlled by them." Mot. Ex. 1 at 2-3.

Center Defendants assert that neither of these scenarios creates a disqualifying conflict of interest and further add that plaintiff lacks standing to raise these concerns. Because the Court agrees with Center Defendants on the threshold issue of standing, plaintiff's motion to disqualify counsel based on conflict-of-interest grounds is denied.

Before a federal court can exercise its jurisdiction, a movant must establish, as an "irreducible constitutional minimum," that he has suffered "an injury in fact" that is caused by the challenged conduct and likely redressable through relief from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Even in instances where a movant has alleged some injury, absent exceptional circumstances, he must generally "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

8

parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *cf. Kowalski v. Tesmer, 543 U.S. 125, 130* (2004) (a third party may be permitted to litigate the rights of another where, *inter alia*, there is a hindrance in the ability of the person possessing the right to protect his own interests). A party seeking disqualification of counsel is not excepted from this requirement – i.e., he, too, must establish standing to pursue his disqualification claim. *See, e.g.*, *Pigford v. Veneman*, 355 F. Supp. 2d 148, 156-57 (D.D.C. 2005) (movants "must demonstrate separate standing – personal and individual injury to them as a result of class counsel's conduct – in order to pursue" their claim to disqualify class counsel).

The D.C. Circuit has "not yet spoken" as to whether a non-client has standing to disqualify opposing counsel. *Cauderlier & Assocs., Inc. v. Zambrana*, No. CIVA 05-1653 ESHJMF, 2006 WL 3445493, at *3 (D.D.C. Oct. 6, 2006). Other courts are split: some have found that non-clients have standing to seek opposing counsel's disqualification based on an attorney's duty to report any ethical violations to the court, while others have refused to confer standing on "unauthorized surrogates" who cannot demonstrate that they are personally harmed by purported conflicts of interests between counsel and counsel's clients. *Compare Kevlik v. Goldstein*, 724 F.2d 844, 847-48 (1st Cir. 1984) (because an attorney with unprivileged knowledge of a

violation of an ethical rule has an obligation to "report such knowledge to a tribunal or other authority," "disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client"), *with In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) ("To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist."); *see also, e.g.*, *Colyer v. Smith*, 50 F. Supp. 2d 966, 969-72 (C.D. Cal. 1999) (collecting cases and noting that courts allowing a non-client to challenge the qualification of counsel on conflict grounds have required that the non-client "establish a personal stake in the motion to disqualify to satisfy the 'irreducible constitutional minimum' of Article III"); *Santander Sec. LLC v. Gamache*, No. CV 17-317, 2017 WL 1208066, at *3-4 (E.D. Pa. Apr. 3, 2017) (collecting cases). Notably, even courts generally reluctant to confer standing on non-clients have recognized that standing may exist where "the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his] claims." *Colyer*, 50 F. Supp. 2d at 971.

Here, plaintiff is not and never has been a client of Mr. Sher or Mr. Both. Rather, plaintiff seeks disqualification of

Mr. Sher and Mr. Both based on alleged conflicts of interest between (1) Mr. Sher and his co-defendants and (2) Mr. Sher and Mr. Both's previous and current clients – i.e., Dr. Engelberg and the Center Defendants, respectively. Plaintiff claims he has standing to do so because Mr. Sher and Mr. Both's continued representation of the Center Defendants in this case would so infect the litigation as to impact his interest in the just adjudication of his claims. *See* Mot. at 7-8. In other words, according to plaintiff, disqualification of opposing counsel is "absolutely necessary to preserve the integrity of the adversary process" and preserve the "fairness of the proceedings." *Id.* at 7, 13. Plaintiff cites to a number of cases, each of which confirm the principle that counsel must be disqualified where their ethical breaches infect the litigation – but none of which give plaintiff his desired result. *See id.* at 7 (citing *Pigford*, 355 F. Supp. 2d at 157 (denying motion to disqualify for lack of standing); *Koller*, 737 F.2d at 1064 (reversing district court's revocation of counsel's pro hac vice appearances and disqualification of law firm); *Cauderlier*, 2006 WL 3445493, at *3 (finding defendant lacked standing because "[h]e [could] not possibly claim that his right to a fair resolution of his claims w[ould] be affected by what law firm represent[ed] his opponents")). To the contrary, as these cases make clear, courts are reluctant to disqualify counsel on fairness grounds unless

the movant clears a high bar by, for example, showing that the conflict is so glaring that it "undermines the Court's confidence in the vigor of the attorney's representation of his or her client," *Pigford*, 355 F. Supp. 2d at 166-167, or "threatens the non-client with immediate and actual harm by creating the substantial risk to her right to a fair and just determination of her claims," *Cauderlier*, 2006 WL 3445493, at *3.

Plaintiff has failed to clear that high bar here. With respect to plaintiff's concern that Mr. Sher's personal interest as a co-defendant will cloud his judgment as an advocate for the Center Defendants, the Court finds compelling that, in their opposition brief, (1) the Center Defendants assert that they have provided consent – after being advised by another attorney – as to Mr. Sher's continued representation; and (2) Mr. Sher maintains that he reasonably believes that he will be able to provide competent and diligent representation to his co-defendants. *See* Opp. at 8-9; D.C. Rule 1.7(c) (a lawyer may represent a client despite a conflict if "[e]ach potentially affected client provides informed consent" and "[t]he lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client"). Likewise, with respect to the allegations of adversity between the Center Defendants and Dr. Engelberg, Dr. Engelberg himself –

the client whose interests are alleged to be harmed – has stated through his counsel that he does not object to Mr. Sher and Mr. Both's role in this case at this stage in the proceedings. *See* Opp. Ex. C. *See also* D.C. Rule 1.9 (permitting a lawyer who formerly represented a client to represent another person in a substantially related matter in which that person's interests are materially adverse to the interests of the former client if the former client gives informed consent).

In short, notwithstanding plaintiff's claims to the contrary, the Court finds that any alleged conflicts here simply do not rise to the level where they affect the integrity of the proceedings or threaten plaintiff's right to a just determination of his claims. Accordingly, plaintiff lacks standing to seek disqualification of Mr. Sher and Mr. Both on conflict-of-interest grounds.

### B. Lawyer as Necessary Witness

Plaintiff also asserts that Mr. Sher should be disqualified under D.C. Rule 3.7, which prohibits a lawyer from acting as an advocate and a witness in the same matter.

As a threshold matter, the Court finds that plaintiff does have standing to seek disqualification on this ground. As the comments to D.C. Rule 3.7 make clear, "[c]ombining the roles of advocate and witness can prejudice" the opposing party's rights in litigation by, for example, limiting an opposing party's

13

access to evidence or affecting the orderly conduct of the trial. *See also, e.g.*, *Colyer*, 50 F. Supp. 2d at 974 (finding that non-client plaintiff did have standing to seek disqualification of opposing counsel who might be needed as a fact witness, "as it directly affect[ed] [plaintiff's] access to evidence and the orderly conduct of the trial"); *Xcentric Ventures, LLC v. Stanley*, No. CV-07-00954-PHX-NVW, 2007 WL 2177323, at *2 (D. Ariz. July 27, 2007) (finding that "Defendants have standing to move for disqualification on the ground of [opposing counsel's] simultaneous service as counsel and witness in the case").

Plaintiff claims that there is "no question" that Mr. Sher will be a necessary witness in this case given his alleged involvement in the RICO conspiracy that forms the basis of this suit. While that may be so, on its face, Rule 3.7 only applies to trial counsel. *See* D.C. Rule 3.7 ("A lawyer shall not act as advocate **at a trial** in which the lawyer is likely to be a necessary witness[.]") (emphasis added). As such, even a lawyer who is likely to be a necessary witness at trial is not disqualified from representing his client during pretrial proceedings. *See* D.C. Ethics Opinion 228 ("Given the Rule's express limitation and the trial-stage purposes it is intended to serve, we conclude that a lawyer who is likely to be a necessary witness at trial may represent a client in most pre-

trial matters. This includes, but is not limited to, taking witness depositions, pre-trial discovery and argument of most pre-trial motions, and also assisting in trial preparation."); *see also Canfield v. Stone*, No. CIV. A. 93-1022(NHJ), 1993 WL 468451, at *1-2 (D.D.C. Oct. 25, 1993) (concluding that any different result "would deprive the defendant of his chosen representative before it is clear that trial will be necessary").

Accordingly, plaintiff's objections to Mr. Sher's role are premature at this stage in the proceedings. Should plaintiff's complaint survive any dispositive motions and proceed toward trial, plaintiff may renew this motion to disqualify Mr. Sher as trial counsel.[2]

### IV. Conclusion

For the reasons set forth above, it is **ORDERED** that plaintiff Joshua Ambush's motion to disqualify Mr. Sher and Mr.

---

[2] Plaintiff also suggests that, given the eventual possibility of disqualification later in the proceedings, the Court should disqualify Mr. Sher now to avoid "delaying the resolution of the case and causing additional expenses to all the parties." Mot. at 8. Given that the Center Defendants already have retained Mr. Schwalb as lead counsel, and given that plaintiff does not allege any disqualifying conflicts as to Mr. Schwalb, it is not clear to the Court that disqualifying Mr. Sher and/or Mr. Both at a later stage would cause significant delay or create additional expenses. In any event, because Rule 3.7 expressly limits itself to advocacy at trial, the Court is reluctant to disqualify defendants' chosen counsel at this juncture.

Both as counsel for Center Defendants is **DENIED**. To the extent that it becomes apparent that Mr. Sher will be a necessary witness at trial, plaintiff may re-raise his arguments for disqualification at that time. A separate Order accompanies this Memorandum Opinion.

    **SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
              **United States District Judge**
               **October 10, 2017**